## AUTOMOBILE INS. CO. et al. v. TEAGUE et al.

### No. 1187—5522.

Commission of Appeals of Texas, Section B.
April 15, 1931.

E. G. Senter and Thompson, Knight, Baker & Harris, all of Dallas, for plaintiffs in error.

Billingsley & Billingsley and Smith & Smith, all of Fort Worth, for defendants in error.

SHORT, P. J.

In this case there were two applications for writ of error successfully prosecuted, one by the plaintiffs in error, the Automobile Insurance Company, and the Fire & Marine Underwriters Agency, the two companies being substantially the same, and the other by the Century Insurance Company, Limited, of Edinburg, Scotland.

The judgment rendered in the Court of Civil Appeals reforms the judgment rendered in the district court, which was in favor of the Chickasaw Lumber Company, a partnership

in so many words, but as well, substantially, also in favor of H. R. Teague, the original plaintiff, against the plaintiffs in error, jointly and severally in the sum of $2,176.70, with interest thereon at the rate of 6 per cent. from July 20, 1927, and all costs, so as to make the judgment read in favor of the Chickasaw Lumber Company against the Century Insurance Company for $702.16 and against the plaintiffs in error for $1,474.54. 19 S.W.(2d) 599.

The original suit was instituted by H. R. Teague, the owner of a recently erected dwelling house, which had been partially destroyed by fire, against the Automobile Insurance Company, which had issued to him, some twenty days before the fire occurred, a fire insurance policy on the dwelling in the sum of $4,200, paying the annual premium due thereon, and also against some other parties, who were afterwards dismissed from the case, and who need not further be mentioned. The Chickasaw Lumber Company, a partnership, which had originally erected the building, and afterwards had repaired it, under a contract to do so at its own expense, having a written lien thereon to secure the payment of the contract price, filed a plea of intervention in which it impleaded the Century Insurance Company.

In the building contract, by virtue of the terms of which the lumber company originally erected the dwelling, and afterwards repaired it when injured by the fire, is a recitation in substance that Teague agreed to keep the improvements insured in the sum of at least $4,000. Evidently in pursuance of this obligation the owner, Teague, took out a policy of insurance during the time the dwelling was being erected, with the Automobile Insurance Company, in the sum of $2,100, paying the premium thereon, and after the building had been nearly completed, some twenty days before the fire occurred, he had this policy of insurance canceled, and another issued for $4,200, paying the premium due thereon. After the fire had injured the building, its owner, H. R. Teague, submitted proof of his loss to the Automobile Insurance Company, whose adjuster accepted same, and agreed with the owner upon the amount of loss he had sustained, upon the faith of which the lumber company, in pursuance of its contract, repaired the building and restored it substantially as it had originally been, incurring an expense of about $2,400. Before the Automobile Insurance Company had finally paid over the money, which its adjuster had agreed it was liable to pay, it discovered for the first time the fact that on the 31st day of March the lumber company had taken out a policy of insurance in the name of the owner and for their benefit, with the Century Insurance Company in the sum of $2,000. This was done without the knowledge on the part of the contractors that the owner had secured insurance on the dwelling, and also without any knowledge on the part of the owner. It appears that all the parties acted in good faith, but in ignorance of what the others had done until the agreement had been reached between the owner and the Automobile Insurance Company that the latter were liable for the loss and the amount of it.

Each of the policies of insurance contained this provision: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void, if the *insured* now has, or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part of this policy." (Italics ours.) The Automobile Insurance Company, as well as the Century Insurance Company, pleaded the provision above quoted, claiming that under the undisputed facts, each of said policies was void. The judgment rendered by the trial court recites the fact, the trial having been to the court without the intervention of the jury, that H. R. Teague and the Chickasaw Lumber Company are entitled to judgment against the Automobile Insurance Company, and that H. R. Teague is indebted to the Chickasaw Lumber Company for more than the amount of the loss sustained, as well as the fact that the Century Insurance Company was not liable to the owner or to the lumber company, upon which facts judgment was rendered in favor of the lumber company against the Automobile Insurance Company for the above-named sum, and it was further decreed that H. R. Teague and the Chickasaw Lumber Company take nothing against the Century Insurance Company. To this judgment the Automobile Insurance Company excepted and gave notice of appeal to the Court of Civil Appeals.

The Supreme Court, on November 26, 1930 [32 S.W.(2d) 824], upon the recommendation of Section B, affirmed the judgment of the district court solely upon the ground that the plaintiffs in error had not filed a legally sufficient supersedeas bond, but afterwards a motion was granted permitting the Automobile Insurance Company to file a new bond [37 S.W.(2d) 155], which has been done, and it therefore now becomes our duty to decide the case upon its merits.

It is the contention of the Automobile Insurance Company, as well as that of the Century Insurance Company, Limited, of Edinburg, Scotland, that neither is liable to H. R. Teague, or to the Chickasaw Lumber Company, because each policy issued by these companies, respectively, expressly provided that it should be void in the event of other insurance above the amount permitted in it. The amount of the policy issued by the Automobile Insurance Company is for $4,200, and that of the policy issued by the Century In-

surance Company is for $2,000. The date of the former is May 12, 1927, and the date of the latter is March 31, 1927, while the date of the first policy taken out by the owner was March 30, 1927, and the date of the building contract was March 24, 1927. This provision of the policies in question was material to the risk assumed in issuing them, and was also a reasonable one. Had the lumber company been authorized by the owner to take out the policy it did, after he had taken out the policy he did, this provision would have been violated, and would have rendered nugatory the obligations of both insurance companies, which otherwise they would have assumed. In other words, it is the contention of the Automobile Insurance Company that both the owner and the lumber company forfeited all rights which they otherwise would have had, by reason of the fact that the lumber company took out another policy with the Century Insurance Company, notwithstanding the fact that the owner was not aware of this action on the part of the lumber company, and notwithstanding the further fact that the lumber company was ignorant of the fact that the owner had taken out a policy covering the same risk and for their benefit.

 It also appears from the record that the building, when fully completed, which was the subject of these policies of insurance, was to cost only the sum of $4,500, and that at the time the $2,100 policy was taken out, on March 30, 1927, a very small portion of the work necessary to be done, in order to complete the building had been done. This situation evidently was the controlling factor on the part of the owner, in carrying out his obligations to the contractor to insure the building for at least $4,000. It is always proper, in construing a written contract, to do so in the light of the circumstances surrounding the parties. Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061; Borden v. Patterson, 51 Tex. Civ. App. 173, 111 S. W. 182; Hoffer Oil Corp. v. Hughes (Tex. Civ. App.) 16 S.W.(2d) 901; Dublin Electric & Gas Co. v. Thompson (Tex. Civ. App.) 166 S. W. 113. The owner and the contractor had agreed that the owner would take the risk of damage or destruction to the materials, which were contemplated to be used in the final completion of the building, by taking out a policy of insurance and paying the premium in such an amount as that should the materials be destroyed at any time the contractor would lose nothing. So the owner did take out a policy of insurance for $2,100 and did pay the premium on this policy. Later, when the building was about completed, evidently having in mind his obligation to protect the contractor from loss in case of damage or destruction of the building, he had this first policy canceled and had another issued for $4,200, paying the premium on that policy, and also evidently intending all the while to perform the obligation he had assumed to keep insured from the time of its inception until its completion, the building in question in such a sum as would carry out the contract he had made with the contractor. According to the undisputed facts the owner did discharge this obligation, and the Automobile Insurance Company, through its adjuster, did agree with the owner that it was liable for the loss occasioned by the partial destruction of the building. After it found out that the contractor had taken out a policy of insurance with the Century Insurance Company, it sought to evade its liability solely upon the ground that each of these policies had this provision inserted. Of course, the courts will declare a contract to be forfeited when the language is so clear and unmistakable that it was the intention of the parties for a forfeiture to occur, under the conditions clearly stated, but the courts will not declare a forfeiture, unless they are compelled to do so, by language which will admit of but one construction, and that construction is such as compels a forfeiture.

This record presents the situation that the Automobile Insurance Company would have paid this loss without question had it not discovered, before the money was actually delivered to the owner, or the contractor, who seems to have been entitled to it, that the contractor had on March 31, 1927, when the first policy issued by the Automobile Insurance Company was in existence, procured from the Century Insurance Company another policy on the same building, and so the rights of the Automobile Insurance Company, as well as its liabilities, must be determined by considering whether the Century Insurance Company had become liable to the owner by reason of it having issued the policy at the request of the Chickasaw Lumber Company. If the owner authorized the Chickasaw Lumber Company, on March 31, 1927, to procure the issuance of this policy from the Century Insurance Company, knowing that he had the day before procured the issuance of a policy of insurance on the same building from the Automobile Insurance Company, then giving due effect to the provision under discussion, embraced in the policies, neither the Automobile Insurance Company nor the Century Insurance Company would have been obligated to pay this owner anything whatever, and, of course, unless the owner was entitled to recover on the policy, the Chickasaw Lumber Company would not, because it had only a lien on the money, and if no money was forthcoming, no lien could attach.

The Automobile Insurance Company cites us to no authority holding that, under these circumstances the rights of the owner became forfeited, though it does cite us to Insurance Company v. Edens (Tex. Civ. App.) 235 S. W. 671, wherein it appears that the person occu-

pying the position of Teague, the owner in this case, had such knowledge through his duly authorized agent. Here, if it should be conceded that the lumber company was the duly authorized agent of the owner, it appears that this agent had no such knowledge, at the time it acted, that a policy of insurance had been taken out on the building. However, we are convinced that a proper construction of the language in the contract, in the light of the situation of the parties and their evident intention, compels the conclusion that the lumber company was not the duly authorized agent of the owner when it took out the policy on the building with the Century Insurance Company, and if no such authority in fact existed, considering the situation reflected by the record, then the owner cannot be penalized by forfeiting his contract with the Automobile Insurance Company by reason of the unauthorized act of the lumber company.

The contract, executed by Teague and wife to B. F. Richardson, the contractor, who afterwards transferred his rights to the Chickasaw Lumber Company, provides, among other things, that the contractor would, at his own expense, construct a certain building of five rooms, in consideration of $4,500 to be paid in the future, and evidenced by a promissory note, and also provided for an express mechanics', materialmen's, laborers,' and contractors' lien on the property and the improvements, wherein, after reciting the situation, the owner agreed to keep the improvements on said premises insured in the sum of at least $4,000 for the benefit of the contractor, and in which it is provided that a failure to keep said improvements so insured shall authorize the contractor to have the property insured at the owner's expense. The record does not disclose that there was any such failure on the part of the owner to keep the premises insured. Upon the other hand, it does disclose the fact that the contractor was not authorized to insure the property, until such failure had occurred.

The evident, ultimate, and vital purpose of the parties to the contract, between the owner and the contractor, was to secure the contractor against loss or damage to the property by requiring the owner, at his own expense, to insure it in some solvent insurance company for the benefit of the contractor. Should we abandon this ultimate purpose of the parties, as reflected by the contract, by giving controlling effect to another provision, wherein it is provided that the contractor shall have the right to select the insurance company, with which the property was to be insured, we are confronted by the fact that the record does not affirmatively disclose that the contractor exercised this privilege of selecting

the insurance company, and by the further fact that the contractor has so far suffered no loss by the act of the owner in failing to insure the property in some solvent insurance company, rendering immaterial, under the state of the record, this particular provision of the contract between the owner and the contractor, since it must be assumed that the Automobile Insurance Company is solvent in the absence of proof to the contrary.

We therefore conclude that the act of the Chickasaw Lumber Company, in procuring a policy of insurance from the Century Insurance Company, was not the act of the owner, so as to penalize him with a forfeiture of the benefits he sought to procure for himself and for the Chickasaw Lumber Company, by procuring the issuance of the policy of March 30, 1927, and the cancellation of said policy and the issuance of another on May 12, 1927. The provision in all of these policies, which we have mentioned, has been held by the courts to be a reasonable one, and the purpose sought to be accomplished a proper one; but the courts will not permit insurance companies to use this provision to escape payment of their just obligations, wherein no such situation exists, as the parties contemplated should exist, when this provision should be made applicable.

The Court of Civil Appeals, in its opinion, in reforming the judgment of the district court, evidently concluded that the policy of May 12, 1927, issued by the Automobile Insurance Company at the instance of the owner, and that of March 31, 1927, issued by the Century Insurance Company at the instance of the Chickasaw Lumber Company, were valid obligations on the part of the respective insurance companies, in favor of the owner, and incidentally in favor of the Chickasaw Lumber Company, and apportioned the losses sustained by the owner between these companies. The application of the Century Insurance Company calls in question the correctness of this conclusion reached by the Court of Civil Appeals. Since we have concluded that the policy issued by the Century Insurance Company was not authorized to be issued by the owner, it necessarily follows that the owner has no cause of action against the Century Insurance Company and that the Court of Civil Appeals erred in so holding.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.